**BRILEY v. CROUCH.**

No. 4694.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1940.

C. H. Dearman, of Statesville, N. C., for appellant.

J. H. Burke, of Taylorsville, N. C. (H. D. Burke, of Taylorsville, N. C., on the brief), for appellee.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by a receiver of a failed national bank from a judgment for defendant in an action instituted to recover the balance due on a stock assessment. The facts are not disputed and judgment was rendered on the pleadings. Defendant was the owner of ten shares of stock in the bank of the par value of $100 each. On January 22, 1934, the Comptroller of the Currency entered an assessment against the shareholders in the amount of the full par value of the shares held by them to be paid on or before March 1, 1934, the assessment against defendant amounting to $1,000. At various times between April 23, 1935, and July 27, 1937, defendant made payments to the receiver aggregating $700, the sum of $200 being paid on the date last mentioned. This action was commenced on May 1, 1940; and the defendant pleaded the North Carolina three year statute of limitations, being section 441 of the Consolidated Statutes of North Carolina, in bar of recovery. The judge, being of opinion that the statute was applicable and that the running thereof was not tolled by the partial payments made, entered judgment on the pleadings for the defendant, and the receiver has appealed.

It is conceded that there is no federal statute of limitations applicable to cases of this character and that the state statute must be applied. The pertinent sections of the limitation statute relied on, sec. 441 of the Consolidated Statutes of North Carolina, are as follows:

"441. Three years. Within three years an action—

"1. Upon a contract, obligation or liability arising out of a contract, express or implied, except those mentioned in the preceding sections.

"2. Upon a liability created by statute, other than a penalty or forfeiture, unless some other time is mentioned in the statute creating it."

■ We think that there can be no question but that the provision applicable is subsection 2 above quoted. While it is true, as this Court said in Chisholm v. Gilmer, 4 Cir., 81 F.2d 120, that the original liability of a stockholder of a national bank is contractual in nature, being based upon his original stock subscription, it is clear that his liability under a stock assessment fixing the amount of the liability is statutory and not contractual in nature. The contract of the stockholder, it is true, furnishes the basis upon which the statute operates; but it is the statute that fixes the liability, and it is action by the comptroller under the statute that fixes the amount thereof. Directly in point is McClaine v. Rankin 197 U.S. 154, 25 S.Ct. 410, 412, 49 L.Ed. 702, 3 Ann.Cas. 500. That case involved a suit on an assessment of stock in a national bank. The statute of limitations was pleaded, and the question was whether the section applicable was section 4800 of the Washington Statutes, which provided a limitation period of three years for an action upon contract, or section 4805, which provided a limitation period of two years for actions not otherwise provided for including statutory liability. In holding that the latter was the section applicable, the Court said: "Some statutes imposing individual liability are merely in affirmation of the common law, while others impose an individual liability other than that at common law. If § 5151 had provided that subscribing to stock or taking shares of stock amounted to a promise directly to every creditor, then that liability would have been a liability by contract. But the words of § 5151 do not mean that the stockholder promises the creditor, as surety for the debts of the corporation, but merely impose a liability on him as secondary to those debts, which debts remain distinct, and to which the stockholder is not a party. The liability is a consequence of the breach by the corporation of its contract to pay, and is collateral and statutory. * * * It is true that in particular cases the liability has been held to be, in its nature, contractual, yet, it is nevertheless conditional, and enforceable only according to the Federal statute, independent of which the cause of action does not exist; so that the remedy at law in effect given by that statute is subject to the limitations imposed by the state statute on such actions. * * * But here the right to sue did not obtain until the Comptroller of the Currency had acted, and his order was the basis of the suit. The statute of limitations did not commence to run until assessment made, and then it ran as against an action to enforce the statutory liability, and not an action for breach of contract."

■ And we think that the partial payments made by the defendant did not toll the running of the statute. This, of course, is a question to be determined according to the law of North Carolina; and we think it clear that partial payments made with respect to a liability imposed in invitum, such as a stock assessment, do not, under the law of that state, suspend the running of its statutes of limitations. This has been expressly held with respect to judgments. McCaskill v. McKinnon, 121 N.C. 192, 28 S.E. 265; Hughes v. Boone, 114 N.C. 54, 19 S.E. 63; McDonald v. Dickson, 87 N.C. 404. And it is worthy of note that the statutes of North Carolina expressly provide that levies of stock assessments made under the law of that state shall be filed in the office of the Clerk of the Superior Court, shall be recorded and indexed as judgments and "shall have the force and effect" of judgments of the Superior Courts. Consolidated Statutes Supp. 1924, of North Carolina, sec. 218(c) (13), amended and re-enacted by Pub.Laws N. C.1927 c. 113.

■ The rule that part payment tolls the running of statutes of limitations was a creation of the courts. The first statute of limitations, 21 James I, ch. 16, contained no exceptions or provisions whereby its running would be arrested. The courts by judicial construction ingrafted thereon the rule that a new promise or part payment of the debt revived the cause of action and

set the statute running anew, an interpretation which led to the passage of Lord Tenterdon's Act, 9 George IV, ch. 14, C.S. of N.C. sec. 416, requiring the new promise to be in writing. See Battle v. Battle, 116 N.C. 161, 21 S.E. 177; Olson v. Dahl, 99 Minn. 433, 109 N.W. 1001, 8 L.R.A.,N.S., 444, 116 Am.St.Rep. 435, 9 Ann.Cas. 252. The rule, however, which had relation only to the limitations prescribed by the statute of James, tolled the statute only with respect to the actions embraced by that statute, viz., actions on agreements, contracts or promises in writing, and was never applied to actions on specialties or actions of tort. It rests upon the fiction that the making of the payments amounts to an implied renewal of the original promise upon which liability is founded. Where that liability does not rest upon a contract or promise, there is no basis upon which the fiction of renewal can rest. As said by the Supreme Court of North Carolina in McDonald v. Dickson, supra, in holding that such payment did not toll the statute applying to judgments: "A payment of part of a debt resting upon a promise has the same effect in continuing or reviving it, as a new promise itself; and the very act is deemed a promise to pay the residue. Its effect is to revive and continue in force the antecedent liability *when the promise is of the same nature as that to be revived* [italics supplied], and the declaration is upon the original cause of action, the plea of the statute being neutralized and put out of the way by the new acknowledgment. 'Nothing is plainer,' remarks Ruffin, C. J., 'than that making a payment on a note repels the statute. It is assuming the balance anew.' Walton v. Robinson ['s Adm'r, 27 N.C.] 341. * * A *judgment* is not an *agreement, contract or promise in* writing, nor is it in a legal sense a specialty. Therefore the action on it is not within 21 James I, and similar enactments in the states. 7 Wait Actions and Defences, 253."

There may logically be little difference between a payment on a stock assessment and a payment on a debt due by contract, although there would seem to be quite a difference between the implications raised by a payment on a debt created by promise, which the debtor presumably desires to meet, and one made on a liability imposed by law, which he presumably desires to avoid; but the basis of the rule here invoked is historical rather than logical. If,

as is the case in North Carolina, it is confined to actions on contract to which the statute of James would apply, it can have no application here; for, as we have seen, the action is not one on contract but on statutory liability. Actions to enforce such liability are as clearly without the rule as actions on judgments, which are similar in character in that they are brought to enforce liabilities created by law in invitum, and not liabilities created by contract. It is suggested that the rule might well be extended, but as this is a case involving the construction and application of a state statute, we are clearly bound by the state decisions and do not feel at liberty to modify or extend the rule which they lay down.

For the reasons stated the judgment appealed from will be affirmed.

Affirmed.