CARTER *v.* RAILROAD.

State of North Carolina on Relation of L. W. CARTER and E. G. MILLS v. WILMINGTON AND WELDON RAILROAD CO., and WILMINGTON, COLUMBIA AND AUGUSTA RAILROAD CO., Lessor.

(Decided May 1, 1900.)

*Demurrer—Refusal to Receive and Forward Freight, Cattle —Joint Plaintiffs for their Own Use, The Code, Section 1212—Separate Penalty for Each Article, Section 1964 —Misjoinder of State, Surplusage—Penalties,. Action Ex Contractu—Aggregate of Penalties—When Given to the State—Constitution, Article IX, Section 5.*

1. In actions for penalties, not given to the State, individuals are entitled to sue, and may sue jointly for their joint use.

2. When the article refused to be received and forwarded as freight is cattle, a separate penalty for each head may be recovered of $50, and if the aggregate of penalties exceeds $200, the Superior Court has jurisdiction.

3. Each day's refusal is a separate offense.

4. Penalties and forfeitures belong to the State for free school purposes, only when given by law to the State. Constitution, Art. IX, sec. 5.

CIVIL ACTION to recover penalties aggregating $3,000 under The Code, sec. 1964, for refusing to receive and forward as freight on two separate days 30 head of cattle at $50 a head, penalty for each day, heard on demurrer before *Timberlake, J.,* at October Term, 1899, of COLUMBUS Superior Court.

The demurrer was overruled, with leave to answer. Defendants excepted and appealed.

The grounds of demurrer are fully stated in the opinion.

*Mr. Junius Davis,* for appellant.
*Mr. J. B. Schulken,* for appellee.

DOUGLAS, J.    This is an action brought under sec. 1964, of The Code, to recover penalties amounting to $3,000. The plaintiffs allege that on two consecutive days they offered for shipment to the agent of the defendant company 30 head of cattle, all of which the said agent refused to receive. The defendant demurred on several grounds as follows:

1. That the cause of action, if any, did not accrue to the plaintiffs, but only to the State of North Carolina for the benefit of the school fund under Art. IX, sec. 5, of the Constitution of this State.

2. That the action can be maintained only in the name of the State alone and not on the relation of the plaintiffs.

3. That if the plaintiffs have any right of action they must sue in their own names and not in the name of the State as relator.

4. That the plaintiffs are improperly joined as relators.

5. That the Superior Court has no jurisdiction, the amount of the penalty being within the jurisdiction of a Justice of the Peace.

6. That the act prescribes only one penalty for the entire shipment offered, and not separate penalties for each head of cattle.

7. That several causes of action are improperly joined.

The demurrer was overruled, and we think properly so. The Code, sec. 1964, provides as follows:   "Agents or other officers of railroads and other transportation companies, whose duty it is to receive freights, shall receive all articles of the nature and kind received by such company for transportation whenever tendered at a regular depot station, wharf or boat landing, and shall forward the same by the route selected by the person tendering the freight under existing laws; and the transportation company, represented by any person refusing to receive such freight, shall be liable to a penalty of

$50, and each article refused shall constitute a separate offense." This section is taken from sec. 1, of chap. 182, of the Laws 1879.

Sec. 1212, of The Code (Revised Code, chap. 35, sec. 47), is as follows: "Where a penalty may be imposed by any law passed or hereafter to be passed, and it shall not be provided to what person the penalty is given, it may be recovered by anyone who will sue for the same, and for his own use."

The defendant contends in effect that the plaintiffs have no cause of action, that they can not sue jointly or in their own names, and that but one penalty attaches for the refusal of the entire shipment offered.

We will reverse the order of consideration. The statute provides in express terms that each *article* refused shall constitute a *separate offense,* that is a distinct violation of the law. The penalty attaches for such violation, and for each and every violation thereof. Otherwise a party might violate the law once, pay the penalty, and thereafter be free from further prosecution. The law never intended to create a criminal immune by any such process of legal vaccination. This is of course a *reductio ad absurdum;* but is it any more so than the contention of the defendant that a contrary view would force us to hold that a separate penalty would attach to each nail in a keg and to every lump of coal in a car load? All laws must be reasonably construed, and in such a manner as to give effect to all parts thereof, if practicable. As this Court has said in *Chappell v. Ellis,* 123 N. C., 259, 263: "We feel compelled to carry out a principle only to its necessary and logical results, and not to its furthest theoretical limit, in disregard of other essential principles." To say that "each article" meant simply the entire shipment offered, would be equivalent to saying that it meant nothing, because it would add nothing to the previous part of the section. To

say further that, even if each article constituted a separate offense, the statute did not intend a separate penalty, would impose upon the statute a construction utterly foreign both to its letter and spirit. The object in providing a penalty is clearly to compel the common carrier to perform its duty to the public, not simply to the abstract public, but to each individual. Penalties are made cumulative so as to make it under all circumstances, as far as practicable, to the interest of the carrier to perform its duty. Punishment and compensation are essentially different. The one aims merely to repair the injury done; the other, to prevent its recurrence. Compensation should under all circumstances exactly equal the injury; while punishment, to be effective, must exceed the injury, or at least be greater than any possible benefit which can accrue to the offender from a violation of the law. Suppose a large number of cattle were offered for shipment, it might be cheaper for the carrier to pay a penalty of $50 than to go to any extra expense or trouble to obtain the necessary cars.

Moreover, the usual and primary meaning of the word "article" is opposed to the idea that it means the entire shipment. The Century Dictionary defines it as derived from "articulus," a joint, and as meaning a joint connecting two parts of the body; one of the parts thus connected; a *separate member or portion of anything.* Worcester says: A single clause in any writing; a particular item of several that make up an account; *a portion of a complex whole.* Webster says: A distinct portion of an instrument; a *distinct part.*

In *Hopkins v. Wescott,* 6 Blatch., (U. S. Circuit Court), 64, where the contract limited the liability of the carrier to an amount not exceeding one hundred dollars upon "any article," it was held that the words "any article" in such paper do not mean a trunk or piece of baggage, and its entire contents, in gross, but mean any article contained in a piece of

baggage." On page 68 the Court says: "This strict con-
struction is in harmony with the policy of the law, and essen-
tial to the protection of the community, in view of the con-
stant devices of carriers to escape the responsibilities of their
calling, while their eagerness to obtain the patronage of the
public remains unabated."

In *Wetzell v. Dinsmore,* 4 Daly, 495, where three cases of
pills were bound together so as to make one package, the
Court of Common Pleas in general term, held that each one
of the boxes constituted a separate article. On appeal, this
judgment was reversed by the Commission of Appeals, 54
N. Y., 496, where the Court said: "We think 'the article'
valued at $50, was the *single package* received, in its entirety.
*   *   *   If it had turned out that each of the three boxes
had contained a different sort of drug and that the defendant
had knowledge of the fact, the case might have presented
a different question." The distinction here does not seem to
us to be very clearly drawn, but we suppose it was intended
to meet the line of cases represented by *Earle v. Cadmus,* 2
Daly, 237, where it was held that the limitation applied to
the articles in a trunk and not to the trunk collectively as one
article. Under any of these cases, as the cattle were not
and could not be bound together into *one package,* each head
would constitute a separate article.

As we are of the opinion that each head of cattle was a
separate article in contemplation of the statute, the refusal of
which was a separate offense, it follows that a separate penalty
attached thereto. As there were thirty head of cattle refused,
thirty separate penalties were incurred by the defendant.
Who then may recover these penalties?

We think that all penalties imposed by sec. 1964, of The
Code, may, under the provisions of sec. 1212, be recovered
by anyone who will sue for the same. While sec. 1967 is not

involved in the case at bar, yet before its amendment by chap. 520, Laws 1891, it was so similar in its nature and purposes to sec. 1964, that the same general rules of construction apply to both, and cases construing either may be cited by analogy in the interpretation of the other. In fact the latter section, originally enacted in 1879, was evidently intended to supplement the former which was passed in 1875, and which provided a penalty only when common carriers allowed freight *received* by them to remain unshipped for more than five days. Under this section alone, when it was not convenient for the carrier to ship the freight within the five days, it could avoid the penalty by simply refusing to receive the freight.

The principles underlying these sections are fully discussed in *Branch v. Railroad,* 77 N. C., 347, apparently the first case upon the subject, in which they are held constitutional. There, the recovery was by a private citizen suing in his own name for three separate penalties in the same action. That case seems to settle several of the questions in the case at bar; and as it has so long stood the test of uniform approval, we are not inclined to overrule it now. It is cited and approved on different points in *Katzenstein v. Railroad Co.,* 84 N. C., 688; *Keeter v. Railroad,* 86 N. C., 346; *Branch v. Railroad,* 88 N. C., 570; *Middleton v. Railroad,* 95 N. C., 167; *Mc-Gowan v. Railroad, Ibid,* 417; *Alsop v. Express Co.,* 104 N. C., 278; *State v. Moore, Ibid,* 749; *Purcell v. Railroad,* 108 N. C., 414; *Sutton v. Phillips,* 116 N. C. 502; *Glanton v. Jacobs,* 117 N. C., 427. These citations show that it has been repeatedly cited with approval since the Constitutional Convention of 1875, as well as before.

In the well considered opinion in *Katzenstein v. Railroad, supra,* this Court expressly held that the penalty against a railroad company for failure to forward freight is not given by Art. IX, sec. 5, of the Constitution, to the county school

fund.    It also held that an action to recover the penalty under the statute is an action *ex contractu*, and was properly brought in the name of the real plaintiff.    This case is cited with approval on these points in *McDonald v. Dickson*, 87 N. C., 404; *Middleton v. Railroad*, and *McGowan v. Railroad*, *supra*; *Maggett v. Roberts*, 108 N. C., 174, and *Sutton v. Phillips, supra.*

The defendant lays great stress upon the case of *Hodge v. Railroad*, 108 N. C., 24, but we think that case can be clearly distinguished from the one at bar.    The Court expressly states that its opinion does not conflict with Katzenstein's case, and bases its judgment upon the distinguishing ground that sec. 1960, of The Code, requires the penalty "to be sued for in the name of the State of North Carolina in the Superior Court of Wake County."

*Hodges v. Railroad* (the present defendant), 105 N. C., 170, also relied upon by the defendant, seems to us to be in favor of the plaintiff.    In that case, the head-note by Justice CLARK, is as follows:    "The plaintiff's complaint contained two causes of action, one to recover damages alleged to have been caused by the road-bed erected by defendant ponding water back on plaintiff's land; the other to recover damages for an alleged breach of duty on the part of defendant in not putting up sufficient cattle guards as required by sec. 1975, of The Code, whereby cattle trespassed upon plaintiff's enclosed lands and crops; on demurrer, held an improper joinder of causes of action, the first being for injury to property, a tort; while the second arose upon *contract* for the breach of an implied contract to perform a statutory duty, and the action should be divided."    The defendant can scarcely now be heard to complain at our following a precedent laid down in its favor and upon its suggestion.

In *Middleton v. Railroad*, 95 N. C., 167, the Court

expressly held that actions for penalties should properly be brought in the name of the person suing—citing the cases of *Branch v. Railroad, Katzenstein v. Railroad, Keeter v. Railroad, Branch v. Railroad,* (2nd case), *supra, and Whitehead v. Railroad,* 87 N. C., 255. The same principle is held in *Maggett v. Roberts, supra; Burrell v. Hughes,* 116 N. C., 430; *Goodwin v. Fertilizer Works,* 119 N. C., 120, in all of which cases Middleton's case is cited with approval.

It is contended that the plaintiffs can not maintain their action even if they are proper parties, because they have improperly joined the State as a plaintiff. This point is expressly decided in *Warrenton v. Arrington,* 101 N. C., 109, 113, where the Court says: "The State is not a proper party to the suit, and it has been decided contrary to the former practice that under The Code system the joining improper parties with the plaintiff is a harmless error, as judgment may be rendered in favor of such as are entitled, and therefore the proceeding is not vitiated"—citing *Green v. Green,* 69 N. C., 294, and *Burrus v. Ashworth,* 72 N. C., 496.

The different causes of action in the case at bar being all of the same nature, and in contract may be joined, thus bringing the aggregate sum within the jurisdiction of the Superior Court, as has been repeatedly held by this Court. *Moore v. Nowell,* 94 N. C., 265; *Martin v. Goode,* 111 N. C., 288; *Maggett v. Roberts,* and *Burrell v. Hughes, supra.*

The only question remaining to be considered is whether the plaintiffs can sue jointly. We see no reason why they can not, and the learned counsel for the defendant frankly admits that he can find no case in this State holding against such right. If the defendant is liable for the penalty, it makes no difference who gets it, as long as its liability is in no way increased. While the penalty accrues to anyone who

may sue for it, it seems peculiarly appropriate that it should go to those who have suffered from the offense.

We find in 88 N. C., 570 and 573, two cases brought for penalties against the present defendant by Branch & Pope, suing in their firm name. While both cases were decided against the plaintiffs on other grounds, no question was made as to their right to sue jointly. Some of the above cases are worthy of more than passing notice.

In the celebrated case of *McGowan v. Railroad, supra,* known as the "Rice case," the plaintiff recovered, under sec. 1967, of The Code, 115 separate penalties of $25 each, amounting in the aggregate to $2,875, for the unlawful detention of 27 bags of rice for 115 days. In the well-considered case of *Sutton v. Phillips, supra,* many of the questions now before us were elaborately discussed, with ample citation of authority. In *Burrell v. Hughes, supra,* Chief Justice FAIR-CLOTH, speaking for a unanimous Court, says: "The person suing for a penalty is the proper party plaintiff, and not the State, unless so expressed in the statute." Citing *Middleton v. Railroad* and *Sutton v. Phillips, supra.* And again on page 437: "A party suing for penalties against the same defendant may unite several such causes of action in the same complaint, and if they exceed $200 the Superior Court will have jurisdiction." In *Goodwin v. Fertilizer Works, supra,* FURCHES, J., speaking for a unanimous Court, says: "The party suing is a proper plaintiff, unless the statute creating the penalty provides otherwise (citing) *Burrell v. Hughes, supra.* The second assignment can not be sustained, as the party claiming the penalty is the proper plaintiff, and not the State (citing) *Middleton v. Railroad, supra.* The third assignment can not be sustained, as this question has been decided and has been expressly held to be constitutional in

*Sutton v. Phillips,* 116 N. C., 502, and a number of other cases there cited."

We are of the opinion that all the grounds of demurrer were properly overruled; that the plaintiffs are entitled to sue jointly for their joint benefit, and may recover a separate penalty of $50 for each head of cattle refused, and for each day on which they were refused; that the plaintiffs were the proper parties to sue, and that the misjoinder of the State, being surplusage, does not affect their right to recover; that penalties lie in contract, and may therefore be joined in the same action, which, if the aggregate sum therein demanded in good faith exceeds $200, comes within the jurisdiction of the Superior Court; and that sec. 5, of Art. IX, of the Constitution, providing that the clear proceeds of all penalties and forfeitures shall be appropriated for establishing and maintaining free schools, applies only to such penalties as are given by law to the State or some department thereof.

The judgment is

Affirmed.

FAIRCLOTH, C. J., dissents.